HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROY E. LUCAS, a single man,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,<br><br>    Defendant. | CASE NO. C11-5331RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>[DKT. #20] |

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment [Dkt. #20]. For the following reasons, the Motion for Partial Summary Judgment on Plaintiff's substantive due process claim is GRANTED.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of the rights secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 452 U.S. 527, 535, 101 S. Ct. 108 (1981). To be liable for damages, the wrongdoer must personally cause the violation. *Leer v. Murphy*, 844. F.2d 628, 633 (9th Cir. 1988). There is no respondeat superior liability. *Polk County v. Dodson*, 454 U.S. 312 (1981). A supervisor is liable under § 1983 only if he "participated in or directed the violation, or knew of the violation and failed to prevent it." The

1 Washington State Department of Corrections is not a "person" for purposes of § 1983 as a matter
2 of law.

3      To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the
4 defendant must be a person acting under color of state law; and (2) his conduct must have
5 deprived the plaintiff of rights, privileges, or immunity secured by the Constitution or laws of the
6 United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a
7 third causation. *See, Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 286-87 (1977).
8 That the plaintiff may have suffered harm, even due to another's negligent conduct, does not in
9 itself demonstrate an abridgment of constitutional protections, *Davidson v. Cannon*, 474 U.S. 34
10 (1986). Instead, plaintiff must meet a higher standard to prove that the individually-named
11 defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S.
12 97, 105 (1976).

13      A determination of deliberate indifference involves two elements, the seriousness of the
14 prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v.*
15 *Smith*, 974 F.2d 1050 (9th Cir. 1992). A "serious medical need" exists if the failure to treat a
16 prisoner's condition would result in further significant injury or the unnecessary wanton
17 infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S.
18 25, 32-35 (1993). Second, the prison official must be deliberately indifferent to the risk of harm
19 to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

20      A prison official is deliberately indifferent to a serious medical need only if the official
21 "knows of and disregards an excessive risk of inmate health or safety." *Id.* at 835. In order to
22 prevail on a claim of deliberate indifference, plaintiff must prove that the prison official was
23 actually aware of facts from which an inference could be drawn that a substantial risk of harm
24

1  exists *and* that the prison official actually drew the inference but never the less consciously

2  disregarded the risk to the inmate's health.  *Id*. at 837-838.  It requires a conscious knowledge of

3  the risk and a deliberate, as opposed to negligent, disregard to the specific risk that is known.  *Id*.

4  at 840.

5        In this case there is not a scintilla of evidence to support the accusation of deliberate

6  indifference to Mr. Lucas' medical condition.  The undisputed evidence is as follows:

7        Glaucoma was first diagnosed shortly after plaintiff was received
      into DOC custody in 2005 after DOC medical professionals note
8     vision problems on a screening examination.

9     Medication to lower intraocular pressure (IOP) was administered
      by DOC medical staff until plaintiff was released from DOC
10    custody in April, 2006.

11    Plaintiff failed to pursue treatment while he was out of DOC
      custody between April 2006 and April 2008.  By the time he
12    returned to DOC custody in April 2008 he had no sight in his left
      eye and reduced sight in the right eye.
13
      Medication to reduce IOP was resumed after plaintiff returned to
14    DOC in April 2008.  A referral to a specialist was recommended
      by medical staff at Washington State Corrections Center but
15    inadvertently was not processed because plaintiff was moved to
      Stafford Creek Corrections Center on June 2, 2008.
16
      Medication to Reduce IOP continued upon plaintiff's transfer to
17    Stafford Creek on June 2, 2008.  Several days after plaintiff's
      arrival at Stafford Creek he was seen by ARNP Judith Nielsen on
18    June 10, 2008 who recommended referral to the optometrist.

19    After receiving the recommendation from DOC medical provider
      Nielsen, Mary Fisher, DOC medical support staff, scheduled
20    plaintiff to see Dr. Betts, the visiting Optometrist, for the next
      available appointment.  Plaintiff saw Dr. Betts on July 19, 2008.
21    Dr. Betts, an independent contractor elected to continue to monitor
      plaintiff's IOP for three months until October 12, 2008 when he
22    recommended a referral to Dr. Estalilla, an Ophthalmologist.

23    For reasons unknown, the consult recommendation form prepared
      by Dr. Betts was not processed in October 2008.
24

>Plaintiff filed a grievance in January 2009 concerning the failure to process the referral to the ophthalmologist. The referral recommendation was brought to the attention of P.A. Wellman who approved the referral that same day. Plaintiff was seen by Dr. Estalilla on February 9, 2009.
>
>Dr. Estalilla performed a surgical procedure which saved the sight in plaintiff's right eye. Plaintiff made a good recovery from the surgical procedure.

The inadvertent failure to process a referral to the ophthalmologist does not amount to deliberate indifference when put in context of persistent activity aimed at resolving Mr. Lucas' medical condition. When Lucas was incarcerated he got prompt and extensive treatment. When he was out of jail he neglected his condition. His civil rights were not violated by the State of Washington.

The plaintiff, in an attempt to salvage his claim of civil rights violations, moved to amend his complaint to substitute Gary Wellman, P.A. in place of John Doe No. 1. There is no evidence to support the conclusion that P.A. Wellman was intentionally indifferent to the October 2008 referral. He was made aware of the prior referral and in January 2009 approved the referral that same day. The delay from October 2008 to January 2009 (some three months) was regrettable, but was in no way malicious or intentional in any way. Using P.A. Wellman as a place holder for some other employee of DOC is ineffectual absent evidence of actual intentional indifference. The Motion to Amend [Dkt. #33] made just two months away from trial is too little and too late. The Motion to Amend [Dkt. #33] is **DENIED**.

1   In the absence of a federal question, this Court lacks jurisdiction over Mr. Lucas' claims
2 and the Court hereby **DISMISSES** the balance of the claims due to lack of subject matter
3 jurisdiction.

4   Dated this 11th day of September, 2013.

*[signature: Ronald B. Leighton]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE